KELLOGG v. CHURCH CHARITY FOUNDATION OF LONG ISLAND.

(Supreme Court, Appellate Division, Second Department. October 16, 1908.)

1. MASTER AND SERVANT—INJURIES TO THIRD PERSON BY SERVANT—RESPONDEAT SUPERIOR—RELATION OF PARTIES.

The rule of respondeat superior, in respect of the liability of a master for torts to third persons by his servant, applies only to the strict relation of master and servant, which exists between persons of whom the one has the order and control of the work done by the other.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1210–1214.]

2. CHARITIES—ADMINISTRATION—LIABILITIES OF CHARITABLE CORPORATIONS—RESPONDEAT SUPERIOR.

Charitable corporations are not subject to the rule of respondeat superior in respect of torts to third persons by physicians, surgeons, architects, and the like, employed by them, who are not servants within that rule, their work not being under the order and control of the employer, but are in an independent employment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 103.]

**3. SAME—ABSENCE OF PROFITS OR BENEFITS.**

No exemption of charitable institutions from liability under the rule of respondeat superior, or from any torts, arises from the fact that they receive no profit or benefit.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 103.]

**4. SAME—DIVERSION OF TRUST FUNDS.**

No ground for nonliability of charitable corporations for torts of their agents or servants in the administration of the trust exists in the diversion of their funds from the trust purposes for the payment of damages for such torts, as there is no rule against such use of trust funds, even in cases of ordinary express trusts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 103.]

**5. TRUSTS—MISCONDUCT OF TRUSTEE—ACTIONS.**

An action does not lie against a trustee for his torts or those of his servants in the administration of the trust, and he must be sued individually; but the court will allow the judgment against him individually to be paid out of the trust funds, provided he was free from willful misconduct.

**6. CHARITIES—ADMINISTRATION—LIABILITIES OF CHARITABLE CORPORATIONS— TORTS—DUTY NOT DELEGABLE.**

A charitable institution is liable for its failure to perform duties specifically cast on it by law, which liability, in cases of acts or omissions of servants, does not rest on the rule of respondeat superior, but rests in all cases on the fact that the duty is one for it to perform itself.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 103.]

**7. SAME—NEGLIGENCE OF SERVANT.**

A charitable hospital corporation is liable for an injury negligently inflicted by the driver of its ambulance by running into a person in the street.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Charities, § 103.]

Appeal from Trial Term, Kings County.

Action by George A. Kellogg against the Church Charity Foundation of Long Island. From a judgment for defendant on dismissal of the complaint at the close of the evidence, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, GAYNOR, and RICH, JJ.

John J. Kuhn (O. N. Brown, on the brief), for appellant.
Albert G. McDonald, for respondent.

GAYNOR, J. This is an action against a charitable hospital corporation for damages for injuries to the plaintiff by being run into in the street by an ambulance of the defendant by the negligence of the driver. There was a dismissal on the ground that charitable corporations are not liable for the negligence of their agents or servants, i. e., that the rule respondeat superior does not apply to such corporations.

The question presented has been discussed in a large number of cases in this country. 4 Am. & Eng. Ann. Cas. 104. The opinions and decisions are not only conflicting, but those which reach the same result do not agree upon any rule of exemption from liability, and many of them rest on stated reasons or grounds which may well be challenged as fallacious. This court is free from the constraint of authority, for the question has not been settled in this state, if, indeed,

in any state. There seem to be no such cases in England. For a correct understanding it is necessary to classify the cases. When that is done the limits of the question will be perceived, and it will also appear that its discussion in most of the cases was irrelevant. Although all of the cases have been examined, it will suffice to cite the principal and typical ones.

1. There are a considerable number of them, such as Corbett v. St. Vincent's Industrial School, 177 N. Y. 16, 68 N. E. 997, and Benton v. Boston City Hospital, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436, which serve as examples of the whole class, in which nonliability rests on the ground that the charitable institution was acting as an agency of sovereignty, and as such shared with it its immunity from being sued, as the familiar rule is. These decisions are promiscuously cited as applicable or as make-weights in cases where such agency did not exist, but obviously have to be left out of consideration in so far as the point actually decided in them is concerned; and the expressions in the opinions outside of that are not binding.

2. In the great bulk of the cases the negligence sued for was that of physicians or surgeons, or of nurses and similar employés, to patients in such charitable institutions. Van Tassell v. Eye & Ear Hospital, 60 Hun, 585, 15 N. Y. Supp. 620; Haas v. Missionary Society, 6 Misc. Rep. 281, 26 N. Y. Supp. 868; Ward v. St. Vincent's Hospital, 39 App. Div. 624, 57 N. Y. Supp. 784; Id., 65 App. Div. 64, 72 N. Y. Supp. 587; Id., 78 App. Div. 317, 79 N. Y. Supp. 1004; Collins v. N. Y. Post Graduate School, 59 App. Div. 63, 69 N. Y. Supp. 106; Joel v. Women's Hospital, 89 Hun, 73, 35 N. Y. Supp. 37; Wilson v. Homeopathic Hospital, 97 App. Div. 37, 89 N. Y. Supp. 619; McDonald v. Mass. Gen. Hospital, 120 Mass. 432, 21 Am. Rep. 529; Hearns v. Waterbury Hospital, 66 Conn. 98, 33 Atl. 595, 31 L. R. A. 224; Conner v. Sisters of the Poor, 10 Ohio Dec. 86; Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L. R. A. 602, 45 Am. St. Rep. 427; Powers v. Mass. Homeopathic Hospital, 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372; Hewett v. Association, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496; Bruce v. Central Meth. Ep. Ch., 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74. It may well seem strange that lack of liability in such cases should be so invariably put on the ground that the defendant for being a charitable institution was not subject to the rule respondeat superior, which applies to the relation of master and servant in respect of torts to third persons by the servant; for such relation of master and servant does not exist as to third persons in the employment of physicians and surgeons, architects, and the like (unless, to be sure, by contract). They are not servants but in an independent employment (Laubheim v. Steamship Co., 107 N. Y. 228, 13 N. E. 781, 1 Am. St. Rep. 815; Allan v. Steamship Co., 132 N. Y. 91, 30 N. E. 482, 15 L. R. A. 166, 28 Am. St. Rep. 556; Burke v. Ireland, 166 N. Y. 305, 59 N. E. 914; O'Brien v. Steamship Co., 154 Mass. 272, 28 N. E. 266, 13 L. R. A. 329; Quinn v. Railroad, 94 Tenn. 713, 30 S. W. 1036, 28 L. R. A. 552, 45 Am. St. Rep. 767; South Flo. R. Co. v. Price, 32

Fla. 46, 13 South. 638; Eighmy v. Un. Pac. R. Co., 93 Iowa, 538, 61 N. W. 1056, 27 L. R. A. 296; Un. Pac. R. Co. v. Artist, 60 Fed. 365, 9 C. C. A. 14, 23 L. R. A. 581); and with them must be classed, on the same principle, it would seem, their assistants, nurses and the like, in the things in which they necessarily act under their control and direction, instead of that of the employer. "The relation of master and servant only exists between persons of whom the one has the order and control of the work done by the other. A master is one who not only prescribes to the workman the end of his work, but directs or at any moment may direct the means also, or as it has been put, retains the power of controlling the work; and he who does work on those terms is in law a servant, for whose acts, neglects and defaults, to the extent to be specified, the master is liable." Pollock on Torts (4th Ed.) p. 72. The case of Hannon v. Siegel-Cooper° Co., 167 N. Y. 244, 60 N. E. 597, 52 L. R. A. 429, is not to the contrary. There the defendant went into the practice of dentistry as a business, and thereby had a contract relation with each patient which made it answerable for any negligence or malpractice of its employés in treating him. The liability grew out of contract.

3. We are now come, by process of elimination, to a precise test of whether, and, if so, in what cases, charitable institutions are exempt from the general rule respondent superior in respect of the torts of their servants.

(a) In many of the cases much is made of the fact that such institutions derive no profit or benefit, on the question of whether such rule applies, or, indeed, whether they can be held liable for any torts. But that exemption from liability does not arise from that fact is manifest from the undoubted liability of other similar institutions which derive no profit or benefit. Rector, etc., v. Buckhart, 3 Hill, 193; Blaechinska v. Howard Mission, 56 Hun, 322, 9 N. Y. Supp. 679; Mulchey v. Meth. Rel. Society, 125 Mass. 487; Davis v. Central Congregational Society, 129 Mass. 367, 37 Am. Rep. 368; Newcomb v. Boston Protective Department, 151 Mass. 215, 24 N. E. 39, 6 L. R. A. 778; Chapin v. Holyoke Y. M. C. A., 165 Mass. 280, 42 N. E. 1130.

(b) In many if not most of the cases a ground for the nonliability for the torts of agents or servants of charitable institutions is that to pay damages for such torts would be a diversion of their funds from the trust purposes for which they are donated by the charitable, and thus a contravention of the trust, and that as such institutions have no other funds it would be futile to allow judgments to be taken against them in such cases. But the opinions of the judges in these same cases almost invariably except cases where the agent or servant was incompetent and there was negligence in his selection; failing to take note that it would be as much a diversion of the trust funds to pay damages for the tort of negligence in selection as for any other tort. If the rule exist it must necessarily apply to all torts and in all cases. The only support for the argument that it does exist is found in the remarks of judges in certain rather old English cases, which were repudiated in later cases, and never had a direct appli-

cation to actions of tort against charitable corporations such as are now common. It is true that an action does not lie against a trustee under a will, or the like, as such, for his torts or those of his servants in the affairs or administration of the trust. He has to be sued individually; but the reason is purely technical, and the courts allow the judgment against him individually for damages to be paid out of the trust funds, if he was free from willful misconduct in the tort. No rule, therefore, that trust funds may not be used to pay damages for torts in the administration of the trust exists even in the case of ordinary express trusts, let alone in the general trusts of charitable corporations. Powers v. Mass. Homeopathic Hospital, 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. 372; Bruce v. Central Meth. Ep. Ch., 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74; Hewett v. Association, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496. The position of such a corporation in respect of its torts would seem to be the same as that of an individual carrying on similar charitable work with donated funds or with his own funds. I do not understand that if my servant, sent out by me on an errand of mercy or charity, negligently runs over one in the street, I am not liable for his act.

4. In what cases, then, is such a person or corporation freed from the rule respondeat superior? That rule exists only where the strict relation of master and servant exists out of which such rule grows, as we have already seen; it does not grow out of every case of one employing another. We must therefore come down to employés in respect of whom such relation of master and servant can exist, for it is useless to talk of the said rule in respect of employés who are not such servants—who are above their grade of service—as is the case of physicians and surgeons, and the like. This brings the question down to the ordinary run of servants, who are subject to the direction of the master at any moment in the manner and way of doing the work assigned to them, in general and in detail. If a charitable institution is to be freed from the rule respondeat superior a ground therefor must be found in law. If, then, in order to find a ground, we again resort to classification of the cases that have come into the courts, or that may arise, and separate torts of such servants against beneficiaries or patients of the charitable trust or institution, from torts against outsiders, a ground for such exemption may be perceived in respect of the former, but not of the latter. The law may imply an intention on the part of the donors of the charitable funds that such funds shall be used for the charitable purpose only, and then imply an acquiescence in this intention by all persons who accept the benefits of the charity, and in that way spell out a waiver by such persons of any responsibility of the institution for the negligence or torts of its servants. If the courts want to exempt such institutions, this may be a tenable, though some may think a rather ingenious or far fetched, ground on which to do it. But no such acquiescence or waiver can be attributed to an outsider; to a person run over in the highway by the ambulance of such an institution by the

negligence of its driver, for instance, as is the case before us. Pow-ers v. Mass. Homeopathic Hospital, 109 Fed. 294, 47 C. C. A. 122, 65 L. R. A. (N. S.) 372; Bruce v. Cent. Meth. Ep. Ch., 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74; Hewett v. Association, 73 N. H. 556, 64 Atl. 190, 7 L. R. A. (N. S.) 496. The cases of such torts to outsiders are few. Those of Noble v. Hahnemann Hospital, 112 App. Div. 663, 98 N. Y. Supp. 605, and Blaechinska v. Howard Mission, 56 Hun, 322, 9 N. Y. Supp. 679, seem to be the only ones in this state. The former was the same as the present case, but the ambulance was at the time in the service of the city, and the de-cision was put on that ground. What was said outside of this was obiter, was taken from opinions in cases of torts to patients, and is open to the same observations which have been applied in the fore-going to such opinions. And in the latter case liability seems to have been taken as a matter of course.

5. It is probably manifest enough at this stage that there are tort cases against such institutions which do not come within the forego-ing classifications and discussion at all. I refer to cases where the duty owed is one specifically cast upon the defendant by law, and therefore incapable of being evaded or escaped by being delegated to any servant. For instance, a section of coping, or a blind hanging by one hinge, or a ceiling of the hospital, might fall and injure an em-ployé, a patient or an outsider, or a broken coal-hole cover in the yard or sidewalk might do a like injury (Blaechinska v. Howard Mis-sion, 56 Hun, 322, 9 N. Y. Supp. 679), or a scaffold put up by the institution for the use of workmen might be defective and fall (Bruce v. Cent. Meth. Ep. Ch., 147 Mich. 230, 110 N. W. 951, 10 L. R. A. [N. S.] 74), or there might be neglect to supply a physician or sur-geon to a patient brought in (Glavin v. Rhode Island Hospital, 12 R. I. 411, 34 Am. Rep. 675). The decision in the recent case of Ab-ston v. Waldon Academy, 118 Tenn. 24, 102 S. W. 351, 11 L. R. A. (N. S.) 1179, where the negligence was the omission to supply fire escapes as required by law, by which an inmate of a charitable edu-cational institution was injured, does not seem to be well bottomed. It is put on the ground of diversion of trust funds which has been discussed and found wanting in the foregoing; and the negligence being that of the institution itself, i. e., in respect of a duty cast upon it by law, the decision cannot, it would seem, be put on the ground of non-liability for acts or omissions of servants in the routine of their employment. Liability in such cases does not rest on the rule re-spondeat superior, but on the narrower one that the duty is one for the defendant to perform itself, and into which the question of the negligence of servants does not enter. Of course if such institu-tions were to be held not liable for their torts or neglects in respect of duties which cannot be delegated to servants, they would be held not liable for any torts of servants also for the same reason of ex-emption, whatever it might be; but there is not any disposition to ex-onerate them from the former liability. For instance, the cases gen-erally admit that they would be liable for negligence in the nondele-

gable duty of selecting competent servants or employés, of whatever grade or kind, as we have seen.

The judgment should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur.