## MARY E. McINERNY v. ST. LUKE'S HOSPITAL ASSOCIATION OF DULUTH.[1]

May 29, 1913.

Nos. 18,027—(112).

**Guarding dangerous machinery — charitable corporations.**

    1. Section 1813, R. L. 1905, imposing upon all persons and corporations owning or operating dangerous machinery, the duty to cover or guard the dangerous parts thereof, so far as practicable, applies to charitable associations owning and operating such machinery, as well as to all other persons or corporations similarly situated.

**Same — liability for injury to servant.**

    2. The duty thus imposed is absolute and nondelegable, and a failure to discharge the same renders the charitable association liable to its servants and employees who are injured in consequence of the neglect.

[1] Reported in 141 N. W. 837.

---

Note.—The question of the liability of charitable institutions for personal injuries, generally, is treated in notes in 7 L.R.A.(N.S.) 481; 10 L.R.A.(N.S.) 74; 22 L.R.A.(N.S.) 486; 32 L.R.A.(N.S.) 62; and 42 L.R.A.(N.S.) 1144.

On the question whether the master's duty to guard machinery is a delegable one, see note in 17 L.R.A.(N.S.) 568.

**Question for legislature.**

  3. If public policy requires that such associations be excluded from the operation of the statute it should be so declared by the legislature and not by the dictum of the courts.

Action in the district court for St. Louis county to recover $15,000 for personal injury received while in the employ of defendant. The facts are stated in the opinion. The answer set out in full articles 1 and 2 of the articles of incorporation of defendant, alleged it was a purely charitable corporation sustained in whole by contributions made by charitably inclined persons for carrying out the purposes set forth in the articles; that it never had any property other than contributed for such purposes; that the hospital, owned and operated by defendant, had at all times been open for the care and treatment of the sick and injured, without regard to their ability to pay therefor, and such sick and injured persons were continually being treated and cared for at its hospital without compensation. The case was tried before Cant, J., who, at the close of the testimony, denied defendant's motion to direct a verdict for defendant, and a jury which returned a verdict of $4,000 in favor of plaintiff. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*Baldwin & Baldwin,* for appellant.

*John Jenswold, Jr.,* and *C. R. Magney,* for respondent.

BROWN, C. J.

Defendant is a corporation organized in the year 1883, under the provisions of title 3, chapter 34, G. S. 1878; now section 3102, et seq. R. L. 1905. The articles of association declare that the general purpose of the corporation "is to establish and maintain at Duluth, Minnesota, a hospital which shall be free to persons needing care and medical or surgical treatment and who are indigent and have no means with which to pay for such care and treatment, and also to furnish care at reasonable rates to such as desire it and are able to pay for the same; the association to be purely eleemosynary; no member thereof to receive any pecuniary profit from his or her

membership, and all sums received by the association from any source to be applied to the purposes of the association."

Subsequent to the organization of the association, buildings were acquired and equipped for hospital purposes, and the association entered upon and has since continued the discharge of the powers and duties conferred by its incorporation. It has accumulated property of considerable value, principally from donations made to it by charitably disposed persons. It receives and cares for indigent patients, and others who are able to pay for the accommodations given them; the great majority of its patients being of ability to pay and are charged for services rendered. Its expenses are paid out of receipts from patients and donations received. There was installed in one of its buildings a laundry department, equipped with necessary machinery and utensils, including an ironing mangle. This mangle was of the ordinary type of such devices for ironing household linen, and was supplied with the usual heated rollers. The rollers were not guarded as required by section 1813, R. L. 1905, though it appears that it was practicable to so guard the same.

Plaintiff was in the employ of defendant as housekeeper with general supervision and charge of the household affairs of the hospital. On October 21, 1910, while plaintiff was engaged in ironing some window curtains, in doing which she operated the mangle, one of her hands was caught between the heated rollers thereof, and burned to such an extent as to necessitate the amputation of the greater part thereof. She thereafter brought this action to recover for such injury, charging in her complaint that the same was caused by reason of the negligent failure of defendant to guard the mangle rollers as required by law, and negligence in failing to keep and maintain the mangle in a safe and suitable condition for use. She had a verdict in the court below, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

1. It is contended that plaintiff failed to show a right of action against defendant for the reasons: (1) That at the time plaintiff was injured she was engaged in work outside of and beyond the scope of her employment, and was guilty of contributory negligence in attempting to operate the mangle; and (2) that since defendant is a

charitable corporation it is not liable in damages for the negligence charged. Our examination of the record leads to the conclusion that the evidence fully justified the jury in finding that plaintiff was, at the time of her injury, within the general scope of her employment, and that she was not guilty of contributory negligence. The facts bring the case within the rule of Carlin v. Kennedy, 97 Minn. 141, 106 N. W. 340.

We therefore pass that branch of the case and come directly to the question whether defendant is responsible to its servants and employees for injuries resulting from its negligence. This is the principal and controlling issue in the case. And, in considering the question, it may be conceded for the purposes of the case that defendant is a charitable corporation, within the doctrine of many of the courts under which such associations are held immune from liability from their negligence. It conducts its affairs without profit to its members, and cares for without charge all indigent persons applying for treatment at the hospital. The fact that a fixed charge is made to those who are able to pay does not necessarily deprive the corporation of its eleemosynary character. Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L.R.A. 602, 45 Am. St. 427.

We have made no attempt to discover the origin of the rule of non-liability applied by many of the courts to such associations, nor to trace the development of the law upon the subject. The rule probably originated in a purpose to foster and encourage such associations, for the benefit of the poor, and at a time when they were purely and wholly charitable, and supported exclusively by donations from the philanthropist and charitably disposed person. Associations of that character are necessarily purely charitable, performing a public function in caring for and extending aid, treatment and comfort to the indigent and poor. It was undoubtedly thought wise to treat them as agencies of the government, and to extend them immunity from the charge of negligence, precisely as though created and operated by the government. As to associations established and operated by the state, it has often been held that no liability for negligence exists in favor either of patients, employees or strangers. Maia v. Eastern Hospital, 97 Va. 507, 34 S. E. 617, 47 L.R.A. 577;

Benton v. Trustees, 140 Mass. 13, 1 N. E. 836, 54 Am. Rep. 436; Downes v. Harper Hospital, 101 Mich. 555, 60 N. W. 42, 25 L.R.A. 602, 45 Am. St. 427; Farrigan v. Peaver, 193 Mass. 147, 78 N. E. 855, 7 L.R.A.(N.S.) 481, 118 Am. St. 484, 8 Ann. Cas. 1109.

The courts are not, however, in harmony upon the general question of liability. In the following cases recovery was allowed against private charitable associations. Bruce v. Central, 147 Mich. 230, 110 N. W. 951, 10 L.R.A.(N.S.) 74, 11 Ann. Cas. 150; Hordern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626, 32 L.R.A.(N.S.) 62, 139 Am. St. 889; Hewitt v. Woman's Hospital, 73 N. H. 556, 64 Atl. 190, 7 L.R.A.(N.S.) 496. The rule exonerating the private association is founded upon various theories, namely, that the rule respondeat superior has no application, that the funds of the association are in the nature of trust funds, and cannot be diverted from the purposes of the trust; that the payment of damages for personal injuries would constitute such a diversion and be unlawful. The trust fund theory, and the inapplicability of the rule of respondeat superior, in actions for injuries to employees, has been repudiated by some of the later decisions, (Kellogg v. Church, 128 App. Div. 214, 112 N. Y. Supp. 566; Basabo v. Salvation Army [R. I.] 85 Atl. 120), but is adhered to in those states holding the rule of nonliability.

And while the general rule of immunity, in cases where the negligence of servants and employees is the basis of the action, wholly disconnected with any claim of negligence on the part of the association itself, and where the association appears to have exercised reasonable care in their selection, is upheld by many courts, there is a sharp conflict in the later decisions when injury to servants or employees has been caused by the negligent failure of the association to perform some absolute or nondelegable duty imposed by general law upon all masters for the protection of their servants. In such cases the weight of reason, in the absence of some express statutory exemption, sustains the rule of liability. In Bruce v. Central, supra, Hewitt v. Woman's Hospital, supra, and Hordern v. Salvation Army, supra, the question is fully and ably discussed and the rule of liability affirmed. A large number of authorities will be found cited in

the note to the above decision in 32 L.R.A.(N.S.) 62; 7 L.R.A. (N.S.) 481. But passing these general observations we come directly to the question before us.

In this action plaintiff was in the employ of defendant as housekeeper, and she was injured while in the line of her employment, by reason of the failure of defendant to supply the mangle with a guard as required by law. It was undoubtedly the common-law duty of defendant to guard this dangerous part of the machine, at least to exercise reasonable care to maintain it in reasonably safe and suitable condition for use. The duty to guard was made absolute by section 1813, R: L. 1905, wherein all dangerous parts of machinery, including ironing mangles, are expressly required, so far as practicable, to be guarded, to the end that those engaged in their operation may be protected from injury. The statutory duty applies equally to all persons, or corporations, operating such machinery, is absolute and nondelegable, and a failure to perform the same is evidence of negligence for which recovery may be had. To say that a charitable association is exempt from the rule finds no basis save the dictum of the courts, and results in placing such associations above the law.

We have no difficulty in the case at bar, one of master and servant, in applying the rule of the Michigan, New York, New Hampshire, and other courts, where the association has been held liable for the nonperformance of its absolute duties when injury to the servant results therefrom. Under nearly all the authorities, liability exists for the negligence of employees in cases where there appears to have been a failure to exercise reasonable care in their selection. Note 4 Ann. Cases 103, 104. The requirement of reasonable care in the selection of servants is a personal nondelegable duty of the master, and, if liability exists for a failure of its performance, then equally a liability should exist for the negligent failure to perform any of the other absolute duties imposed upon the master, either statutory or at common law. In fact it seems clear, under the modern trend of judicial opinion, that a failure to discharge any nondelegable duty creates, in the absence of express statutory exemption, a liability on the part of associations of this kind. In this view nearly all the

courts could well unite, though the reasoning of some of them, based upon the trust fraud theory, would probably lead to an adherence to the rule of nonliability in all cases.

We adopt the view of liability stated, and hold that, since plaintiff's injury was the result of a failure of defendant to comply with the statutory obligation to guard the mangle in question, the verdict must be sustained.

In reaching this conclusion we are not to be understood as underestimating, or failing to appreciate to its fullest extent, the blessings bestowed upon the destitute and the poverty-burdened applicant for help. Our view is that the duty created by law for the protection of servants is absolute, and no employer should be exempt therefrom, except by action of the legislature. No public good can come from permitting one charitable corporation, by the failure of a duty imposed by law, to maim and disfigure its servants and employees when, depending upon the nature of the injury, their future welfare must, of necessity, be looked after by some other charitable association, public or private, or by already over-burdened or poverty-stricken relatives and friends. No such situation should be brought about by an arbitrary rule of immunity from liability applicable only to one class of persons, unless deemed by the legislature necessary to the existence and life of charitable associations.

Nor are we to be understood as holding that the trust funds of the defendant may be applied to the payment of this verdict. The question is not involved. Defendant is not supported exclusively from such funds. On the contrary its maintenance would seem from the evidence to come principally from patients who pay for services rendered them.

Order affirmed.