## CITY OF SHAWNEE v. JETER et al.

No. 14135—Opinion Filed Nov. 6, 1923.

Rehearing Denied Dec. 4, 1923.

Second Petition Denied Dec. 26, 1923.

Leave to File Third Rehearing Denied Jan. 15, 1924.

(Syllabus.)

1. **Municipal Corporations — Liability for Negligence of Health Officers.**
The general rule is that a city is not liable for the negligent acts of its duly constituted health officers in handling and caring for contagious diseases.

2. **Hospitals—Death from Contagious Disease—Negligence—Proximate Cause.**
In an action to recover for the death of a party, where it is alleged said party contracted a contagious disease by reason of the negligent acts of those in charge of the hospital, it is necessary that the acts of negligence complained of occurred at the approximate time the party was exposed

to the contagious disease, and when the acts of negligence relied upon according to the evidence occurred after said party contracted said disease, the same is insufficient to support the finding that the negligent acts complained of were the proximate cause of the injury.

3. **Municipal Corporations — Action for Negligent Death from Contagious Disease—Issues—Instructions.**

Where a party brings an action against the city to recover damages for the death caused by the negligence of the city in operating a hospital for profit and the negligence of the health officer and the health department of the city in handling a contagious disease, to wit, smallpox, and the court in its instruction advised the jury, if they find the city was guilty of the acts of negligence complained of in the petition, thereby permitting the jury to consider the acts of negligence of the health department, as well as the city in its private capacity in operating its hospital, and the parties in this court admit or concede that they do not rely upon the negligence of the health officers for recovery, held, the instruction is erroneous, and constitutes reversible error.

Error from Superior Court, Pottawatomie County; Leander G. Pitman, Judge.

Action by J. H. Jeter and others against the City of Shawnee. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Ross and Thurman and Wyatt & Waldrep, for plaintiff in error.

Lydick & Wilson, S. Randell Pitman, and Iris C. Saunders, for defendants in error.

McNEILL, J. This action was commenced in the superior court of Pottawatomie county by J. T. Jeter, the surviving husband of Bertie Jeter, deceased, and the minor children of said Bertie Jeter, deceased, against the city of Shawnee, for damages for the death of Bertie Jeter, caused by the negligent acts of the officers of said city.

The petition is very lengthy and alleges the city is a municipal corporation, and by virtue of certain ordinances of the city, and the statutes of the state, has a right to, and is engaged in the business of maintaining a general hospital, and the management and control of the hospital is in the mayor and council, and the supervision thereof is vested in a committee of which the mayor is ex officio member, and he with the consent of the council appoints a matron, and they adopt rules and regulations for the management and government thereof, and establish rates for patients coming into the hospital, and the ordinance provides that the moneys coming into the hospital from all sources, when paid into the city treasury, shall be credited to the hospital fund. It is further alleged that the hospital is maintained for hire and compensation by the city for profit.

It is alleged that Bertie Jeter entered the hospital on the — day of January, 1922, as a patient for a valuable consideration and she was to receive the usual and customary care and attention, she being treated and attended by a private physician of the city of Shawnee.

It is alleged that during the time Bertie Jeter was at the hospital a certain tramp became sickened with smallpox at the hall of the Salvation Army, and the city physician, who is the city health officer, and mayor were notified and the city physician removed said patient to the general hospital. Certain ordinances were pleaded which provided that no smallpox patient should be removed from one place in the city to another without the consent of a health officer, and reference is made to the city ordinances which require the city health officers to establish a hospital for contagious and infectious disease. It is further alleged the mayor and the city physician carelessly and negligently caused the tramp to be removed to the city hospital, knowing he was infected with a contagious disease.

It is further alleged after the removal of the smallpox patient to the hospital, he was under control of officers of the hospital; that he was placed in a ward and the door of his room allowed to remain open, and the nurses were permitted and allowed to go into said room and about the hospital and other rooms of said hospital; that the officials in charge of said hospital knew the patient had smallpox, but, notwithstanding that fact, they permitted the door of his room to be open and carelessly allowed the nurses to go out of the room occupied by him and to pass by the open door of said room. That as a result of the negligent handling of said patient, the hospital became permeated and filled with smallpox germs and Bertie Jeter contracted smallpox and died.

To this petition, the defendant, the city of Shawnee, answered by general denial and pleaded that it was a municipal corporation and engaged in operating a hospital for the care of the sick, and denied the city was operating the hospital for profit, but as a part of its governmental duty.

The evidence disclosed that Mr. Jeter had been a patient of the hospital for several months prior to the time Mrs. Jeter became a patient. Mrs. Jeter visited him quite frequently and she herself became sick. and a patient in the hospital as a county charge. The evidence disclosed county patients were sent to the hospital and the county had an arrangement whereby it paid the city. Exactly when Mrs. Jeter became a patient, the record is not clear. The doctor who waited upon her testified that she became a patient some four or five days prior to the time she was removed from the hospital to a detention hospital outside of the city. She was removed on the 18th day of January, 1922. The evidence in one place infers she became a patient in the hospital about the 10th or 12th of January. The evidence further disclosed that some time in December, 1921, a man whose name is unknown, was sick at the Salvation Army headquarters. Dr. Scott, the city health physician, was summoned, quarantined the Salvation Army headquarters and removed the patient to the isolation ward in the city hospital. The evidence disclosed there was one ward of the hospital used as an isolation ward for contagious diseases. This ward was on the lower floor, in one corner of the building, or was an addition to the main building, connected by a door from the main hall of the hospital into a smaller hall, which led to this isolation ward, that consisted of three rooms and a bath. The city health officers placed the unknown man in said isolation ward and attended him thereafter. A nurse of the hospital was assigned to said isolation ward. Mrs. Jeter died at the detention hospital on January 22, 1922.

Judgment was rendered in favor of the plaintiffs and against the city for the sum of $10,000. From said judgment the city has appealed. The plaintiff in error first presents the question as follows: "Is the municipality liable for the negligent acts of its duly qualified health officers in the preservation of the public health?" Defendants in error contend this is not an issue in the case, as the defendants in error do not rely upon the negligent acts of the health officer, Dr. Scott, but rely upon the acts of the city acting through the hospital matron, Anna K. Shaw, who was in control of the hospital, and it was upon her negligence that this case was founded. The defendants in error further state that they rely upon the negligence of the agents and servants of the hospital and not that of the health department, and the two depart-

ments in Shawnee have no connection whatever with each other.

The general rule of law is that a city has two classes of powers: The one legislative, public, governmental, in the exercise of which it is a sovereignty and governs its people; the other proprietary, quasi-private, conferred upon it, not for the purpose of governing its people, but for private advantage of the inhabitants of the city, and of the city itself as a legal personality. Let us concede for the sake of argument in this case that the city, in so far as it was operating a general hospital. charging and receiving compensation from the patrons, was acting in its private capacity and became liable to its patrons for the negligent acts of those in charge of said hospital.

We think the courts are almost universal, however, in holding as follows: The care of persons afflicted with contagious diseases is a governmental function, and a municipal corporation is not liable in damages for the neglect of its officers in performing services in aid of that function. See Butler v. Kansas City (Kan.) 155 Pac. 12, Ann. Cas. 1918 D, 801, and cases annotated on page 803.

Dr. Scott in placing the stranger afflicted with smallpox in the isolation ward of the hospital was acting as the health officer of said city and carrying out one of its governmental duties. The evidence disclosed and is uncontradicted that the the health officer, Dr. Scott, attended this patient thereafter as the physician. The evidence is uncontradicted that when this patient was placed in the isolation ward, a Miss Cordell, a nurse in the hospital, attended him, and she stayed in this ward some two or three days before being relieved, and whether she was again a nurse in the hospital is not clear, but it may be inferred, after being relieved, she did return a few days thereafter. The second or third day the patient was there, Miss Turner was assigned to this isolation ward, and stayed in said ward with the patient until she was removed to the detention hospital to care for smallpox patients.

It is uncontradicted that the county had a building at the edge of the city limits that had been used as a detention hospital, and shortly prior to this time the same had been used for treating parties with venereal diseases. That at the time the stranger was assigned to the general hospital there was no furniture in this detention hospital, and the same was empty except a family was residing there looking after the build-

ing. The county had some arrangements with the city whereby it looked after this detention hospital, and had been using the same prior thereto for patients afflicted with venereal diseases.

The defendants demurred to the evidence introduced by the plaintiff, and at the close of the testimony asked for an instructed verdict. So, taking the position of defendants in error, is there any evidence in the record to support the acts of negligence upon behalf of the matron, or those working under her? The acts of negligence relied upon were, first, the nurses were permitted to go in and out of the isolation ward and through the hospital. There is no evidence in our judgment to support this allegation. The testimony of Dr. Byrum was that Mrs. Jeter had contracted smallpox, not while she was a patient, but while she was a visitor at the hospital. He further testified she was a patient at the hospital only a few days prior to the 18th day of January. He further testified that it took smallpox from four or five days to ten days to develop. He was then asked what is the period of incubation, which is the time between exposure and the showing of the symptoms, and he testified from seven to 13 days; he testified then one has fever for about four days, and a general feeling of getting worse, until it begins to break out. So, under his testimony, Mrs. Jeter was exposed on or prior to the 7th of January, 1922. There is no evidence that any other nurse except Miss Cordell and Miss Turner ever visited or went into the isolation ward. There is no evidence that Miss Cordell while assigned to the isolation ward ever left the same or visited the other departments. The only evidence that Miss Turner ever left the ward or was seen outside of the isolation ward was the evidence of Mr. Jeter, who testified he saw Miss Turner on the steps in the main building leading to the second floor, and he was asked if it was the time that his wife was in the hospital and he said it was when she was in a ward on the second floor. If we take this evidence as true, Miss Turner was in the hall at the time that Mrs. Jeter was developing smallpox. If it was an act of negligence, and could be attributed to the hospital, and not to the health department, it could not have had anything to do with Mrs. Jeter contracting smallpox, because she already had contracted the same.

Another witness, Mr. Teeples, testified that he was general roustabout, and saw Miss Turner when about the middle of the hall going to the store room to get something, and witness said he told her she had better get back. That was one afternoon. He was asked if he ever saw her any more, and he said "No, sir." In regard to seeing the door open to the small hall that leads to the main hall and the isolation ward, he was asked if he ever saw them open, and he said, "Well, one time; it was during the time they thought it was practically over."

The evidence further disclosed that the patient and the nurse in the isolation ward were furnished food by raising an outside window and passing the food into them. The dishes were brought out and then carried through the main hall into the kitchen.

In order for the defendants in error to recover upon their theory of the case, it was necessary to show that the acts of negligence complained of occurred prior to the time or about the time Mrs. Jeter was exposed to smallpox. Construing the above evidence in its most favorable light, we do not think it is sufficient to submit the question of negligence to the jury, or sufficient to support a verdict upon the theory presented by plaintiffs.

If there is some evidence we have overlooked that might be sufficient to submit the case to the jury, it would be necessary to reverse the same for another reason. The case was tried upon a different theory from that presented in this court. The trial court in instruction No. 9 advised the jury, in substance, if they believed the city was operating a hospital in its private capacity and was negligent in the particulars alleged in the petition, and said negligence was the approximate cause of the damages, then they should find for the plaintiff. This instruction is erroneous, because the petition alleged Dr. Scott, the health officer, and the mayor, as health officer, were negligent in removing the patient to the hospital, and this instruction permits the plaintiffs to recover upon this theory. The court should have advised the jury that the health officers in removing the patient to the isolation ward of the hospital were in the discharge of the governmental duties of the city, and no liability existed against the city even if their acts were negligent. Second, the court should have also distinguished between the duty the city owed to a patient in its hospital and the duty it owed to a visitor, or a licensee; there being evidence in the record that Mrs. Jeter contracted the disease, not while a patient, but while a visitor. The court should also have advised the jury that the acts of negligence, if any committed by the

hospital, must have occurred at the approximate time Mrs. Jeter was exposed to smallpox. The fact that the door may have been open after she was exposed to smallpox, or the nurse was seen in the hall of the hospital after Mrs. Jeter was exposed or contracted the disease, while the same might be an act of negligence, could not be the proximate cause of the death of Mrs. Jeter.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with instructions to give the plaintiff in error a new trial.

KENNAMER, NICHOLSON, COCHRAN, and MASON, JJ., concur.