GABLE v. SALVATION ARMY.

*100 P. 2d 244.*

No. 28846.   Jan. 16, 1940.

Rehearing Denied March 19, 1940.

Clay M. Roper and Herman Merson, both of Oklahoma City, for plaintiff in error.

Billups, Billups & Billups and Barritt Galloway, all of Oklahoma City, for defendant in error.

CORN, J. This is an appeal by plaintiff in error, plaintiff below, from an order and judgment of the district court of Oklahoma county sustaining defendant's motion for judgment on the pleadings and opening statement of plaintiff's counsel.

Plaintiff filed suit alleging the Salvation Army was the owner of a certain building, and that he was employed by defendant to assist in the work of redecorating same; that while so employed he fell from a scaffold and was seriously and permanently injured; that his injuries resulted from defendant's negligence in failng to furnish him a safe and suitable place in which to work, and safe and suitable instrumentalities with which to work; for his injuries he sought $10,000 damages.

Defendant's motion to make more definite and certain and defendant's de-

murrer to plaintiff's petition were overruled. Defendant answered in the form of a general denial, and thereafter filed an amended answer admitting it owned and operated the premises wherein defendant was injured, but alleged further that it was a charitable corporation, organized solely for the purpose of carrying on religious, charitable, educational, and philanthropic work without pecuniary gain or profit; that all its property was the result of public benevolence, and its funds were and are trust funds, not subject to execution; further, that at the time of the alleged injury the plaintiff was a beneficiary of defendant's charity in that defendant had been providing plaintiff and family with all the necessities of life, and defendant impliedly waived any right to hold it liable for injury.

At the trial defendant moved for judgment on the pleadings and opening statement of plaintiff's counsel. The motion was sustained and judgment rendered for defendant on the grounds that the pleadings and opening statement showed defendant to be a charitable corporation and as such not liable for injuries to its servants. From this ruling and judgment the plaintiff has appealed, and by this appeal has presented for the first time to this court the question whether a charitable organization can be held liable to respond in damages for negligence resulting in injury to an employee.

No precedent exists in this jurisdiction which might suffice to provide the basis for a rule in the instant case. The only decisions from this court touching upon the question are those which might be denominated the "hospital cases." Among these are: (1) City of Shawnee v. Jeter, 96 Okla. 272, 221 P. 758, wherein it was held the city was not liable for the negligence of the health officers, but the decision was not based upon any application of the doctrine relating to charities; (2) City of Pawhuska v. Black, 117 Okla. 108, 244 P. 1114, in which the city was held liable for negligent injury to a paying patient in a city owned hospital, but the question as to immunity on the grounds of the hospital being a charitable institution was not discussed; (3) Carver Chiropractic College v. Armstrong, 103 Okla. 123, 229 P. 641, was a case wherein the institution was held liable for injury to a patient, but the college was not a strictly charitable institution.

In City of Shawnee v. Roush, 101 Okla. 60, 223 P. 354, this court held a city hospital liable for negligent injury to a paying patient, and this case was the forerunner of later "paying patient cases," and affirmed the Alabama court's holding in the case of Tucker v. Mobile Infirmary Ass'n, 68 So. 4, L. R. A. 1915D, 1167, which decision held there could be no claim of exemption from liability by an eleemosynary institution, at least as against a paying patient. Following these earlier decisions this court has reiterated the so-called "paying patient" doctrine in City of Okmulgee v. Carlton, 180 Okla. 605, 71 P. 2d 722, and in Sisters of the Sorrowful Mother v. Zeidler, 183 Okla. 454, 82 P. 2d 996.

When the English doctrine, that charitable organizations were immune from tort liability, was repudiated in this country in the case of Glavin v. Rhode Island Hospital, 12 R. I. 411 (1879), there was precipitated a continuing controversy, remarkable not only for the widely divergent opinions as to the extent to which this immunity should extend, but also because of the irreconcilable reasons advanced as grounds for granting any immunity whatever.

Numerous theories have been advanced as providing the grounds of immunity from liability of such charitable corporations. One of these is the public policy theory, recognized by many courts, and quite as heartily disapproved of by the courts of Kentucky, Michigan, Minnesota, New Hampshire, New York, and Rhode Island. See 30 A. L. R. 452. It is likewise interesting to note that some courts have expressly rejected this theory, not only where the injured party is a stranger, but also where the injured party is a beneficiary of the charity.

The so-called "trust fund theory" has often been resorted to in providing the foundation of nonliability, this theory being that a charitable corporation holds its funds in trust for the charity to be administered, and it would be a breach of the trust to apply these funds to any other purpose. Emery v. Jewish Hospital Ass'n (Ky.) 236 S. W. 577; Eads v. Y. W. C. A. (Mo.) 29 S. W. 2d 701; Bougon v. Volunteers of America (La.) 151 So. 797; Powers v. Homeopathic Hospital (Mass.) 109 F. 294, 65 L. R. A. (N. S.) 372; Ettlinger v. Trustees of Randolph-Macon College (Va.) 31 F. 2d 869; Webb v. Vought et al. (Kan.) 275 P. 170. In fairness, it must likewise be noted that this doctrine has been the object of particular criticism and widespread disapproval. See authorities cited in 13 R. C. L., sec. 10, p. 946, footnote 10.

A third theory for holding charitable corporations immune from tort liability is that they are governmental agencies, and as such are therefore entitled to the same immunity accorded other governmental agencies. This theory, however, has not been so often resorted to as those above mentioned.

Another theory upon which the doctrine of immunity has been based is that those administering charity in the corporation's name are not servants within the legal meaning of the term, in that the corporation receives neither benefit nor profit from their work, and therefore cannot be held liable under the doctrine of respondeat superior. See Betts v. Y. M. C. A. of Erie, 83 Pa. Super. Ct. Rep. 545; Thibodaux v. Sisters of Charity of the Incarnate World (La.) 123 So. 466; Morrison v. Henke, 165 Wis. 166, 160 N. W. 173. As mentioned regarding the other theories of immunity, this doctrine, too, has been the object of severe criticism.

Still another line of decisions declares and adheres to the rule that charitable organizations are exempt from liability where the injured party is the recipient of benefits from the charity. See Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 14 A. L. R. 563; Roberts v. Ohio Valley General Hospital (W. Va.) 127 S. E. 318, 42 A. L. R. 968; Deming Ladies Hospital Ass'n v. Price, 276 F. 668.

Research reveals that different jurisdictions have laid down widely differing decisions regarding this problem, from the plain rule declaring charitable corporations liable as any private corporation (Cohen v. General Hospital Society of Conn. (Conn.) 154 A. 435) to the equally conclusive declaration of the Kansas court in Webb v. Vought, 275 P. 170, that a charitable corporation is not liable for injury even to third parties. The reasons for the different decisions being equally as varied.

Even the most cursory research makes it apparent that there is no ground upon which this doctrine of nonliability has been rested by one court that has not been assailed and criticized at length by some other court, notwithstanding the fact they both arrive at the same conclusion in their decisions. Hence, in such a state of confusion, and in the absence of precedent of our own court which can be applied to the relationship of the parties in the case at bar, it devolves upon us to adopt a principle which can be applied in such cases, and which will serve the ends of justice in the light of a wise public policy.

Since there was no evidence introduced at the trial in the court below, judgment having been rendered on the pleadings and opening statement of plaintiff's counsel, we are relieved from the necessity of considering the rule, to be applied where the injured party is a beneficiary of the charity, as to whether there is an implied waiver of liability on the part of such beneficiary when the benefits of the charity have been accepted by him.

We are unimpressed with the authorities which adhere to the rule of immunity from liability on the grounds of public policy. Public policy imports something uncertain and fluctuating according to the changing economic needs, social customs, and moral aspirations of the people. A state has no public policy

cognizable by the courts, except that derived by clear implication from the established laws found in the Constitution, the statutes, and the judicial decisions. See Weeks v. N. Y. Life Ins. Co., 128 S. C. 223, 122 S. E. 586, 35 A. L. R. 1482; Griffith v. Mutual Protective League, 200 Mo. App. 87, 205 S. W. 286; Pendleton v. Greever, 80 Okla. 35, 193 P. 885, 17 A. L. R. 317; see L. R. A. 1915D, 1167; 13 R. C. L. 945.

The exemptions accorded charitable and benevolent associations by our court and statutes (other than exemption from taxation) nowhere are extended to granting them immunity for liability in excess of that granted ordinary business corporations. No exemptions in behalf of such corporations being expressed, other than the ordinary exemptions from taxation, no grounds exist in this jurisdiction for exempting them on the basis of public policy, since no expression is contained in our Constitution, our statutes, or judicial decisions evidencing any desire or intention to do so. Therefore, in the absence of expressions that our public policy, as it now exists, contemplates the extending of such additional benefits to charitable corporations, we must conclude no grounds exist for declaring charitable corporations immune from liability on the grounds of public policy.

Another theory upon which the doctrine of immunity is placed is that charitable corporations are performing a governmental function, and should therefore be entitled to the same immunity as other governmental agencies. We are unable to subscribe to this doctrine, for such is not our understanding of a "governmental function." A governmental function must be presumed to be the exercise of a public purpose, whereas something may be done for a public or quasi-public purpose and still not be in the exercise of a governmental function, for this must depend upon the power and identity of the person or corporation acting. See Herrington v. Atteberry, 21 N. M. 50, 153 P. 1041. The mere fact a private corporation carries on activities which are cloaked with the habiliments of the public good, is to us insufficient upon which to accord to such organization the same exemptions reserved for governmental agencies.

Another theory providing immunity for liability, and one which is supported by a long line of decisions, is the theory no liability can exist because the rule of respondeat superior does not apply, the underlying idea being that the doctrine is a hard rule at best and should not be applied except where the service by the employee yields a profit. See Downes v. Harper Hospital, 101 Mich. 555, 25 L. R. A. 602; Jensen v. Maine Eye & Ear Infirmary, 107 Me. 408, 33 L. R. A. (N. S.) 141; Roosen v. Peter Bent Brigham Hospital, 235 Mass. 66, 14 A. L. R. 563.

Probably one of the best statements in regard to this rule is found in the case of Taylor v. Flower Deaconess Home and Hospital (Ohio) 135 N. E. 287. In this case the court pointed out this exemption had its origin in considerations of policy and would doubtless always be developed, modified, or extended as changing social and economic conditions demanded. Thus, the exemption from liability, subject to the condition of care and selection in the retention of servants, which condition is so often found in decisions upon this subject, indicates that this exemption from the operation of the rule (of respondeat superior) should not be sweeping and complete, but should be surrounded by certain safeguards to prevent the neglect of duty. The Ohio court further pointed out:

"* * * Sound reasons sustain the great weight of authority to the effect that a public charity should not be held liable for the negligence of the servant in whose selection the hospital and its managers have exercised due care. On the other hand, such an institution is liable when it fails to exercise such care."

If the immunity of charitable corporations from liability is to be accepted on the ground the rule of respondeat superior does not apply, then it must be upon the principle that a charitable organization does not come within the main reason for the rule of public policy which supports the doctrine of respon-

deat superior; that the corporation derives no benefit from what its servant does, in the sense of personal and private gain, which was the reason for the rule. Obviously this is without force unless it is said that the doctrine of respondeat superior has no application where the business, in which the agent or servant is employed, is not carried on for the purpose of profit. Such reasoning is erroneous and we decline to follow it.

For other cases dealing at length with this particular phase of the problems, see Bruce v. Central Methodist Church, 147 Mich. 230, 110 N. W. 951, 10 L. R. A. (N. S.) 74; Geiger v. Simpson Methodist Episcopal Church of Minneapolis (Minn.) 219 N. W. 463, 62 A. L. R. 716; Sisters of Charity of Cincinnati v. Duvelius (Ohio) 173 N. E. 737; Basabo v. Salvation Army (R. I.) 85 A. 120, 42 L. R. A. (N. S.) 1144; McInerny v. St. Lukes Methodist Hospital Ass'n, 122 Minn. 10, 141 N. W. 837; Hodern v. Salvation Army, 199 N. Y. 233, 92 N. E. 626; Armendarez v. Hotel Dieu (Tex. Com. App.) 145 S. W. 1030, affirmed in 210 S. W. 518.

The "trust fund" doctrine of immunity from liability was that the trust funds could not be used to compensate injured persons for negligence, since to do so would be to divert such funds to purposes never intended by the donor and thus frustrate the purposes of the creator of the trust.

If this be true, it follows that if a charitable corporation, by its servants, negligently maintained a building, from which it derived a profit, it would not be liable for any damage suffered by reason of such negligence. Thus, one walking along a street and injured by a falling object from a building above could only recover according to whether the object fell from a building belonging to a charitable organization or to a private firm.

Effectual, though indirect, liability of private trust funds is generally recognized, although suit cannot be maintained against the trustee in his official capacity for torts committed in management of the property.

However, the trustee can be sued individually and the judgment and execution run against him as an individual; when satisfied, the trustee may be reimbursed from the trust estate, if not individually at fault. See Bogert on Trusts and Trustees, vol. 3, secs. 731-735. (Note—modern tendency is to permit tort creditor to collect from trust property by suing trustee in his official capacity.) Thus, while a trust fund is protected from immediate levy under execution for technical reasons connected with the trustee's legal estate in the property, this technical immunity does not afford ultimate protection. Therefore, in our opinion, this technical immunity of a trust fund from execution upon a judgment recovered in a tort action affords no real reason for holding immune the funds of charitable corporations where these technical considerations have no application. We are therefore unable to agree with the authorities which exempt charitable organizations from tort liability.

We have heretofore pointed out the futility of any attempt to harmonize the different decisions upon this question and the reasons therefor, and have mentioned the insurmountable difficulty attendant upon any attempt to review the multitude of decisions in regard to this question. We are of the opinion, and hold, that charitable corporations are not immune from liability for torts by reason of any exemption accorded them on the basis of the purposes for which they were incorporated.

The judgment of the trial court is reversed and the cause remanded, with directions to vacate the judgment rendered, overrule the motion for judgment on the pleadings, and proceed in a manner not inconsistent with the views expressed herein.

BAYLESS, C. J., WELCH, V. C. J., and OSBORN, GIBSON, HURST, DAVISON, and DANNER, JJ., concur. RILEY, J., absent.