**LICHTY v. CARBON COUNTY AGR. ASS'N.**

**No. 205.**

District Court, M. D. Pennsylvania.
March 6, 1940.

Martin H. Philip, of Palmerton, Pa., and Milton N. Nathanson, of Philadelphia, Pa., for plaintiff.

Charles B. Lenahan and Daniel J. F. Flood, both of Wilkes-Barre, Pa., for defendant.

JOHNSON, District Judge.

Plaintiff brought suit against defendant agricultural association to recover for injuries alleged to have been sustained at defendant's annual fair while plaintiff was a paying patron thereof which injuries are alleged to have been caused by the negligence of defendant's servants in the manner

in which they strung a certain wire from a grandstand to a pole, the wire supporting a heavy blind or shade to prevent non-paying patrons from witnessing events beyond that screen. The case was listed for trial when it was agreed that before trial the Court should hear argument and determine the question of law whether this county fair association is a charitable institution and hence not liable for the negligent torts of its servants and employees. This question of law is now before the Court for disposition.

In deciding this question the Court has had the benefit of briefs from both parties and also the testimony of Frank R. Diehl, Secretary of defendant corporation, taken by deposition, and after a careful study of these papers and numerous cases the Court has knowledge of the nature of defendant corporation sufficient to decide the legal question raised.

Defendant corporation was chartered under the Act of June 14, 1887, Pa.P.L. 383, now supplanted by the Non-Profit Corporation Act of 1933, 15 P.S.Pa. § 2851—1 et seq., for the purpose of educating the public by exhibiting artistic, mechanical, agricultural and horticultural products and providing public instruction in the arts and sciences, the organization not to be run for profit.

From the testimony of the Secretary it appears that this county agricultural association has in general the attributes of the usual county fair organizations. In some respects it may have expanded beyond the ordinary agricultural association. There are three buildings on the fair grounds where farm produce, flowers and fancywork are annually displayed. There are no exhibits of mechanical equipment except as voluntarily exhibited in the hope of sale. On the fairgrounds defendant built an airport hangar, not for its own use, but to rent. The association receives rent for a private dwelling house on the grounds. Defendant from time to time enters into boxing exhibitions and automobile races on a percentage basis. From time to time the grounds are rented for shows, games, and circuses. From concessions on location at the annual fair defendant has received more than $4,000 in one week, about half of which comes from one amusement concession alone. Horse racing is run at the fair, entrants paying a fee of a certain percentage of the purse offered. Defendant during the fair runs a night show of vaudeville nature, involving an outlay of $2,878 for one week. Liability insurance is carried "to protect the association against any probable accident". Defendant's advertisements of the annual fair emphasize the horse and automobile races and the night show.

Defendant provides no public instruction in agricultural methods, and leaves the agricultural displays to the County Agent, retaining "no control over that at all", "spending no money for the display", and maintaining "no officers or men in charge about the display".

By statute defendant is exempt from certain taxes, and to date the association has paid no dividends on its stock, par value $20, which the Secretary estimates to have a present market value of $5 per share.

This is the organization which defendant maintains is a charity and should not be liable for negligent torts of its servants.

Different theories have been advanced by different courts in determining that a certain institution or corporation should not be liable for negligent torts of its servants, and each theory has been the subject of attack by other courts. Regardless of the theory used, the decisions which hold non-liability, label the organization a "charitable corporation" or an "eleemosynary institution."

Some cases have found non-liability on the ground of public policy, as evidenced by the charter, the constitution and the laws of the state involved: Vermillion v. Woman's College of Due West, 104 S.C. 197, 88 S.E. 649. A state has no public policy recognized by the courts, except that derived by implication from the established laws found in the Constitution, the statutes and the judicial decisions: Gable v. Salvation Army, Okl.Sup., 100 P.2d 244, Jan. 16, 1940. No public policy is evidenced by the Constitution, statutes, or judicial decisions in Pennsylvania in favor of exempting agricultural associations from tort liability. The mere fact that the charter and the empowering statute therefor set forth educational purposes is not sufficient to establish such a public policy. Nor is the non-profit nature of the corporation alone sufficient to establish such policy. And the fact that tax statutes have been enacted exempting these corporations from tax is no proof of an intent to exempt them from tort liability. There are no clear decisions of a court of last resort in Pennsylvania discussing the

problem, but there are decisions where county fair associations have been held liable for negligence, without mention of exemption on the ground urged here: Kelly v. Northampton County Agricultural Society, 1926, 286 Pa. 97, 132 A. 832; James et ux. v. Columbia County Agricultural, etc., Association, 1936, 321 Pa. 465, 184 A. 447. If there were a public policy of this state in favor of the exemption claimed, the Court could have, and probably would have, supported it in those cases, of its own volition. If any conclusion is to be drawn from those cases it is that the public policy which defendant asserts does not exist in Pennsylvania.

The "trust fund" theory is sometimes advanced as a basis for finding non-liability: Fire Insurance Patrol v. Boyd, 120 Pa. 624, 15 A. 553, 1 L.R.A. 417, 6 Am.St.Rep. 745. It is grounded on the principle that a charitable corporation holds its funds in trust for the charity to be administered, and it would be a breach of the trust to apply these funds to any other purpose. However, the modern tendency, and the best reasoned decisions permit the tort creditor to sue the trustee in his representative capacity and collect from the trust estate: Gable v. Salvation Army, Okl.Sup., 100 P.2d 244, Jan. 16, 1940; Note: 43 Dickinson Law Review 143, and cases there cited. The "trust fund" theory as a ground for exemption must necessarily break down under such decisions.

It has been said in sustaining the immunity of charities from tort suits that the rule of respondeat superior does not extend to a case where the master receives no profit or personal gain from the services. This theory has been severely criticized and rightly so: Kellogg v. Church Charity Foundation, 128 App.Div. 214, 112 N.Y.S. 566; Gable v. Salvation Army, Okl.Sup., 100 P.2d 244, Jan. 16, 1940. The liability of a master is predicated not on whether he profits by the services, but on the authority and control which he exercises over his servants.

Some courts assert that charitable corporations are "governmental agencies, and as such are therefore entitled to the same immunity accorded other governmental agencies". Gable v. Salvation Army, Okl. Sup., 100 P.2d 244, Jan. 16, 1940. Before this court could grant immunity on this ground, the organization involved would have to be more closely allied with governmental functions than the present defendant is disclosed to be.

A fifth theory allowing exemptions from tort liability is the "implied assent" theory, the argument being that when one accepts services or enters upon the grounds of a charitable institution he impliedly assents that the charity will not be liable for negligence. This Court does not accept such a theory. Liability for negligence is the general rule, and exceptions will be made only where the nature of the organization dictates otherwise or where there is an express contract of the parties to the contrary. Neither of these presents itself in the case now before the Court.

Regardless of theories, this Court thinks after a careful survey of the facts as developed in this case, that this is not the type of institution or organization which should be granted immunity from liability for the negligent torts of its servants. Defendant is simply a private, non-profit corporation, which, in its operation and activities, can show no sound reason why it should not be held liable for its servants' negligence.

Even if this Court were to hold defendant a "charitable corporation" or an "eleemosynary institution" and then for some reason find a general non-liability for negligent torts of servants, defendant would in the present case still not be entitled to that immunity. The accident in question happened at a corner of the grandstand on the fairgrounds, when the wire supporting a blind, described earlier in the opinion, dropped and injured plaintiff. The grandstand and the premises immediately surrounding it were not being used for, or incidental to, charter or charitable purposes at the time of the accident. That location was used in connection with horse and automobile races, in connection with vaudeville shows and entertainments, but not in connection with or incidental to any charter purposes which could be called "charitable" so as to grant defendant immunity for its servants' negligence.

The question of law raised is decided in favor of plaintiff. It will not avail defendant to assert that it is a charity and so not liable in tort for its servant's negligence. The Court here decides that the defendant corporation cannot assert an immunity from such liability because of the nature of the corporation.

Therefore, since the question of law has been decided in favor of plaintiff, the above case is hereby ordered to be placed on the trial list for the next term of Court at Scranton, Pennsylvania, March, 1940.