JULIUS JENSEN, Administrator,

*vs.*

MAINE EYE AND EAR INFIRMARY.

CHRISTIAN JULIUS JENSEN *vs.* SAME.

Cumberland.    Opinion December 15, 1910.

*Charities.    Institutions.    Negligence.    Special Laws, 1897, chapter 519.*

A purely charitable institution, supported by funds furnished by private and public charity, cannot be made liable in damages for the negligent acts of its servants.

The character of an institution as a "public charity" is not affected by charging those able to pay for use of its rooms.

Where the defendant was a corporation organized and existing solely as a public charity, its organization having been ratified, confirmed, and declared to be legal and valid as such by chapter 519 of the Private and Special Laws of Maine, approved March 25, 1897, *held* that it was not liable in damages for the negligence of its servants in permitting an inmate of the defendant institution to fall from a window and which resulted in her death.

On exceptions by plaintiff.    Overruled.

Two actions on the case against Maine Eye and Ear Infirmary of Portland, a corporation, to recover damages for the alleged negligence of the servants of the defendant in allowing the plaintiff's wife, Mary J. Jensen, while an inmate of the defendant institution,

to evade the supervision of her attendants and fall through a window to the sidewalk, five stories below, whereby she was fatally injured and died within a few hours after the accident. One of said actions was brought by the plaintiff in his capacity as administrator of the estate of his said wife, and the other was brought by him in his own behalf as husband of the said decedent. Plea, in each action, the general issue, with a brief statement, in each action, as follows:

"1. That defendant is not a corporation for the treatment of sick and injured persons for hire, as the plaintiff in his writ has alleged against it.

"2. That defendant is a corporation organized and existing solely as a public charity, its organization having been ratified, confirmed and declared to be legal and valid as such by Chapter 519 of the Private and Special Laws of the State of Maine, approved March 25, 1897."

The actions were tried together and at the conclusion of the evidence the presiding Justice directed a verdict for the defendant in each action, and the plaintiff excepted.

The case is stated in the opinion.

*Dennis A. Meaher*, and *Michael T. O'Brien*, for plaintiff.

*Seth L. Larrabee*, and *Sydney B. Larrabee*, for defendant.

SITTING: SAVAGE, PEABODY, SPEAR, KING, BIRD, JJ.

SPEAR, J. These are actions brought against the Maine Eye and Ear Infirmary by Julius Jensen in his own behalf and as administrator of the estate of Mary J. Jensen, charging the defendant with negligence of its servants in allowing the plaintiff's decedent, while an inmate of the Infirmary, to evade the supervision of her attendants and fall through a window to the sidewalk, the accident resulting in fatal injuries. The case shows that Mary J. Jensen was ill with typhoid fever and that her attending physician had arranged with the defendant for her to occupy a private room in one of the wards of its building. But she was not a patient of the Infirmary. She remained the private patient of Dr. Connellan, who had full charge of her case and attended her daily while she was in the insti-

tution. He directed the nurses and house doctors and says so far as he knows his directions were complied with. He also understood the regulation of the institution, requiring a specific contract for the employment of a constant nurse, but says he considered the attendance of such a nurse unnecessary and employed none. It appears, however, that it was the duty of the nurses connected with the institution, although Mrs. Jensen was in a private room and under the direction of a private physician, to give her such attendance in her room as was necessary for her care and the execution of the physician's orders. Further than this Mrs. Jensen was not under the control of the officers of the corporation. She was put there by her husband by the advice of her physician. The Infirmary did not engage to cure her or take care of her. It undertook to do nothing more than to give her the benefit of one of the rooms and beds and her share of the nursing.

The case also clearly shows that the defendant was not a money making corporation; nor a business corporation organized for profit; but purely a charitable institution, having no stockholders and paying no dividends. All its receipts are consigned to the general fund for the benefit of charity. Upon this state of facts the presiding Justice at the conclusion of the testimony directed a verdict in each case for the defendant. To this ruling the case comes to the Law Court on exceptions.

The defendant in its brief sets up two grounds of defense: 1. That defendant is not a corporation for the treatment of sick and injured persons for hire, as the plaintiff in his writ has alleged against it. 2. The defendant is a corporation organized and existing solely as a public charity, its organization having been ratified, confirmed and declared to be legal and valid as such by chapter 519 of the Private and Special Laws of Maine approved March 25, 1897.

It is the opinion of the court that the order of the presiding Justice can be sustained upon both grounds, but the second being conclusive as a matter of law, the first need not be considered. No principle of law seems to be better established both upon reason and authority than that which declares that a purely charitable

institution, supported by funds furnished by private and public charity, cannot be made liable in damages for the negligent acts of its servants. Were it not so, it is not difficult to discern that private gift and public aid would not long be contributed to feed the hungry maw of litigation, and charitable institutions of all kinds would ultimately cease or become greatly impaired in their usefulness.

The defendant is a charitable institution. It is so declared by a decision of our own court. In *Farrington* v. *Putman*, 90 Maine, 405, it is said referring to this very defendant: "Here is an institution, and the only one of the kind in the state, and virtually a state charitable institution of the most beneficent kind, seeking money for supporting its very life and existence, and to enable it to render assistance free of charge to the poor of the state suffering from diseases of the eye and ear." The constituent elements which are regarded as characteristic of charitable institutions are defined in *Hospital Association* v. *McKenzie*, 104 Maine, 320, as follows: "It comes within the letter and the spirit of a charitable corporation whose distinctive feature is that it has no capital and no provision for making dividends or profits, deriving its funds mainly from public and private charity and holding them in trust for the object of the institution." The same doctrine is also emphatically established in Massachusetts. In *McDonald* v. *Mass. Gen. Hospital*, 120 Mass. 432, the court say: "The corporation has no capital stock, no provision for making dividends or profits, and whatever it may receive from any source it holds in trust to be devoted to the object of sustaining the hospital and increasing its benefit to the public, by extending or improving its accommodations and diminishing its expenses. Its funds are derived mainly from public and private charity; its affairs are conducted for a great public purpose, that of administering to the comfort of the sick, without any expectation, on the part of those immediately interested in the corporation, of receiving any compensation which will enure to their own benefit, and without any right to receive such compensation. This establishes its character as a public charity."

It is claimed, however, that the defendant charges a compensation for the use of its rooms to those who are able to pay, and

thereby loses one of the essential attributes of a charitable institu-
tion.    But this in no way changes the character of the institution.
In the McKenzie case above cited, the testator provided in his will
that part of the income from his estate should be used for the main-
tenance of a "free hospital."    In this case it was contended that it
was the purpose of the testator "to establish a hospital absolutely
and entirely free," not one which might provide a certain number
of free beds to charity patients, and that neither of the hospitals
claiming to meet the conditions of the bequest claimed to be free in
this sense.    But the court in construing the word, say :    "Nor is
the word 'free' used in the sense of without compensation from any
one receiving its benefits.    Such a hospital is practically unknown.
Income may be received from such as are able to pay, and yet the
hospital be free."    It is the opinion of the court that the defendant
is a charitable institution in fact and in law.

*Exceptions in each case overruled.*