**Helen RHODA**

v.

**AROOSTOOK GENERAL HOSPITAL**

**and**

**Viola DeFalco.**

Supreme Judicial Court of Maine.

Feb. 20, 1967.

Errol K. Paine, Bangor, for plaintiff.

Brown, Wathen, O'Connor, Choate, Lund & Finn, by Robert W. O'Connor, Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN and DUFRESNE, JJ.

DUFRESNE, Justice.

On report. The plaintiff's alleged cause of action arose from the following admitted history. On May 21, 1960 the plaintiff fell and fractured her left leg when she slipped on the floor at home. While she was a paying patient of the corporate defendant at the Aroostook General Hospital, the broken bone of her leg was reunited by surgical operation, a metal pin being implanted in her hip. Prior to her final discharge from the hospital with her left leg three inches shorter than her right leg, she was required to undergo three additional operations. Plaintiff alleges that the 3 additional operations and her resulting leg impairment and deformity were occasioned by the negligence of the corporate defendant and its employees, and that the defendant, Aroostook General Hospital, was answerable in damages to her because of the negligence of the corporation itself as distinguished from the negligence of its employees. The specific corporate negligence is averred in manner as follows:

"That Plaintiff's injuries and damage described in Paragraph 15 were caused as a direct and proximate result of the negligent, reckless and careless failure of the Aroostook General Hospital to properly select qualified employers, to properly train its employees, and to adequately supervise and control its employees."

It is conceded that the corporate defendant is a charitable institution. The defendant's motion to dismiss on the ground of charitable immunity was granted. The plaintiff appeals from said ruling.

The parties couched the issue in the following terms: does the non-liability rule of charitable immunity extend to shelter the corporate charity from liability for its own corporate negligent acts as it does for the negligence of its servants? We answer that the corporate charity is fully immune from liability and deny the appeal.

As recently as 1963, we rejected strong suggestions for us to reconsider and overrule the charitable immunity rule adopted in 1910 in Jensen v. Maine E. & E. Infirmary, 107 Me. 408, 78 A. 898, 33 L.R.A., N.S., 141, and we did this in clear and unambiguous language: "We are satisfied that if the doctrine of charitable immunity from tort liability were to be abolished in Maine, such a far reaching change in policy should be initiated in the Legislature and receive careful legislative consideration." Mendall v. Pleasant Mountain Ski Development, Inc., 159 Me. 285, 191 A.2d 633. In *Mendall*, we neither broadened nor narrowed the rule but held that the defendant organization which received and administered virtually no charitable gifts or donations was not within the class of beneficiaries of the charitable immunity doctrine.

The Legislature, in 1965 and 1966 (P.L. 1965, c. 383, Special Session 1966, c. 513 §§ 27, 28) did consider the charitable immunity doctrine, but, instead of abolishing it as it might have if it wished to change the policy developed under the doctrine, it merely modified it to the extent of permitting recovery of damages to an amount not exceeding the limits of insurance coverage which the charity might be carrying at the time of the negligent or tortious act.

14 M.R.S.A. § 158: "A charitable organization shall be considered to have waived its immunity from liability for negligence or any other tort during the period a policy of insurance is effective covering the liability of the charitable organization for negligence or any other tort. Each policy issued to a charitable organization shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such organization is immune from liability on the ground that it is a charitable organization. The amount of damages in any such case shall not exceed the limits of

coverage specified in the policy, and the courts shall abate any verdict in any such action to the extent that it exceeds such policy limit."

Such legislative adoption is additional reason for our continued adherence to the charitable immunity doctrine.

■ But does negligence of the corporate charity in the selection, training, supervision or control of its personnel or employees, remove the protection of immunity and make the rule inapplicable? We think not.

■ The rationale of the immunity rule in favor of charitable institutions lay in the bounden duty of a public charity as a trustee to apply its funds in furtherance of its beneficent purpose. This was recognized in *Mendall*, supra: "Our court saw fit in *Jensen* to rest its grant of immunity upon two grounds, (1) that funds donated for charitable purposes are held in trust to be used exclusively for those purposes, and (2) that to permit the invasion of these funds to satisfy tort claims would destroy the sources of charitable support upon which the enterprise depends." The payment of claims based on negligent selection, training, supervision or control of employees or personnel would divert the trust funds from their intended purpose and dry up the sources of charitable gifts to the same extent as would the payment of claims arising from the mere negligence of the charity's servants. Where the doctrine of charitable immunity is based on the trust fund theory, no logical distinction can be perceived whereby the charity should be protected from liability if the injuries are solely the result of its servants' negligence, while it should be visited with liability if the injuries are not only the result of a servant's negligence but if in addition thereto, the charity was negligent in selecting, training, supervising, controlling or keeping in its employ such incompetent servant. There is no sound distinction in reason to help support a different rule regarding the liability of a charitable institution for the negligence of its servants and agents and its liability for the carelessness on the part of its governing body. There is equally no sound ground for distinction between exoneration or immunity from liability for the negligence of the ordinary servants of the charity and that of corporate officers, sometimes termed corporate negligence, including negligence in selecting, training, supervising, controlling or retaining employees. The same result, relief from liability, follows whether the tort be ascribed to the negligence of management in selecting incompetent agents, servants and employees or be due to the negligence of such subordinate agents, servants and employees selected with care. Roosen v. Peter Bent Brigham Hospital, (1920) 235 Mass. 66, 126 N.E. 392; 14 A.L.R. 563; Barrett v. Brooks Hospital, Inc., 338 Mass. 754, 157 N.E.2d 638 (1959).

We do recognize that the trust fund theory upon which our rule of immunity is based has been severely criticized. See Adkins v. St. Francis Hospital of Charleston, W. Va., 143 S.E.2d 154, at 160 (W.Va. 1965); Granger v. Deaconess Hospital of Grand Forks, 138 N.W.2d 443, at 447–448 (N.D.1965); see also note in 25 A.L.R.2d 29, 142, et seq.; Prosser on Torts (2d ed.) 784–788; Harper and James, Torts, § 29.16.

■ However, we also recognize that immunity of charitable institutions from tort liability carries overtones of public policy determinations legislative in character. Such question is affected and may be better resolved by considerations of broad economic and social influences in the State. What the public policy of this State in such an important area of life and action should be may necessitate the conduct of a general investigation which this Court in litigated cases is ill-equipped to undertake. Since our Court in *Mendall* has deferred consideration of judicial overruling of the immunity rule to the judgment of the Legislature, and since the Legislature did not abrogate the doctrine but accepted it to the extent of permitting recovery of damages to the limit of

insurance coverage on the theory that the "charitable organization shall be considered to have waived its immunity from liability for negligence or any other tort," we see less reason to depart from our stated position at this time. Furthermore, the legislative waiver by insurance coverage was made generally to apply in cases of immunity from liability for negligence or for any other tort, without regard to whether the negligence or tort arose in the performance of corporate or administrative duties, or merely in the conduct of its routine affairs. This was tacit recognition that the immunity of charitable institutions from liability for corporate negligence as well as for the negligence of subordinate employees shall remain where no insurance coverage is provided.

If public charities are to be subjected fully to the doctrine of respondeat superior in the field of tort liability, as all other business enterprises in the State are, let the Legislature as the ultimate policy maker in the State so declare in appropriate language.

The entry will be

Appeal denied.

RUDMAN, J., did not sit.