**Dorothy A. THOMPSON**

v.

**MERCY HOSPITAL.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1983.

Decided Oct. 29, 1984.

Greenberg & Greenberg, Stanley Greenberg (orally), Portland, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Ernest Babcock (orally), Wayne R. Douglas, Portland, for defendant.

NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ., and DUFRESNE, A.R.J.

NICHOLS, Justice.

The narrow issue presented in this appeal is whether a hospital which derives less than one percent of its annual revenue from charitable sources is entitled in a tort action to the defense of charitable immunity. We conclude that it is not.

On February 22, 1982, the Plaintiff, Dorothy A. Thompson, entered a complaint against the Defendant, Mercy Hospital, in Superior Court, Cumberland County; the complaint alleged that the Plaintiff was mentally retarded and that the Defendant had negligently given her inadequate training and supervision in the operation of a pressing machine in its Portland facility.[1] It was further alleged that the Plaintiff's left hand was drawn into the machine and sustained "partial permanent impairment." The Plaintiff sought damages for medical expenses and for pain and suffering.

The Defendant filed a motion to dismiss, invoking the defense of charitable immunity. Hearing on this motion was continued to allow the Plaintiff to conduct discovery limited to the issue of whether the Defendant was a charitable institution for purposes of immunity from tort liability. Following a hearing on the Plaintiff's motion to compel, it was determined that the Plaintiff could discover the sources of the Defendant's revenue by percentages but not by amounts. The Plaintiff drafted its interrogatories accordingly, and the Defendant answered them on December 6, 1982.

These answers revealed that unrestricted gifts and bequests comprised .6%, .5% and .1%, respectively, of the Defendant's annual revenues in the fiscal years 1980, 1981, and 1982, while specific donations constituted .3%, .1% and .1%, respectively, of its revenues for these same years.

Prior to the hearing on its motion to dismiss, the Defendant filed two supporting affidavits. After the hearing, the Superior Court granted the motion, treating it as a motion for judgment on the pleadings. On March 1, 1983, the court granted the Defendant's motion to alter or amend the judgment by expressly treating the motion to dismiss as a motion for summary judgment. M.R.Civ.P. 12(b), 59(e).

On appeal, the Plaintiff argues that the Superior Court erred in applying the doctrine of charitable immunity to the Defendant. In addition, she challenges the sufficiency of the Defendant's affidavits. We do not reach the latter issue, because, even assuming that the affidavits were entirely valid, the uncontradicted information in the Defendant's answers to interrogatories plainly reveals that the Defendant cannot here successfully assert a defense of charitable immunity.

The doctrine of charitable immunity is a creation of our common law.[2] Except for one significant restriction imposed by statute,[3] its applicability in Maine is controlled entirely by the precedents of this Court. Under the leading cases, in order to qualify for charitable immunity, an institution must, *inter alia*, derive its funds "mainly from public and private charity." *Mendall v. Pleasant Mountain Ski Development, Inc.*, 159 Me. 285, 289–90, 191 A.2d 633, 635–36 (1963); *Jensen v. Maine Eye & Ear Infirmary*, 107 Me. 408, 410, 78 A. 898, 899 (1910). This requirement is one of the "constituent elements" of charitable institutions for tort immunity purposes. *Id.* In its absence, charitable immunity is not available. *Mendall, supra.*

We have recognized two rationales for this immunity: "(1) that funds donated for charitable purposes are held in trust to be used exclusively for those purposes, and (2) that to permit the invasion of these funds to satisfy tort claims would

---

1. Although the complaint is not explicit on this point, it appears that the Plaintiff was a CETA worker employed by a sub-contractor at the time of the alleged injury.

2. The defense of charitable immunity was first recognized by this Court in *Jensen v. Maine Eye & Ear Infirmary*, 107 Me. 408, 78 A. 898 (1910). For the history of charitable immunity, *see generally* W. Prosser, *Handbook of the Law of Torts* § 133 (4th ed. 1971). *See also* Comment, *The Role of the Maine Law Court in Abrogating the Common Law Doctrines of Governmental and Charitable Immunity from Tort Liability*, 25 M.L.Rev. 359 (1973).

3. Under 14 M.R.S.A. § 158, a charitable organization is deemed to have waived its tort immunity to the extent of its insurance coverage.

destroy the sources of charitable support upon which the enterprise depends." *Rhoda v. Aroostook General Hospital*, 226 A.2d 530, 532 (Me.1967); *Mendall, supra*, 159 Me. at 290, 191 A.2d at 636. Neither rationale justifies extending immunity to an organization which derives only a modicum of its financial support from charitable sources. The small fraction of the Defendant's revenues donated for charitable purposes need not be depleted to satisfy tort claims. Even where its insurance coverage may be insufficient to satisfy such claims fully, the Defendant can draw exclusively upon its noncharitable revenues. The second rationale is inapplicable because the Defendant's survival does not depend on its sources of charitable support.

The Defendant proposes an additional justification for charitable immunity: "that to permit tort actions against an uninsured nonprofit hospital would have a serious and dramatic effect upon the quality of that facility's health care." We have never approved this rationale, and we decline to do so now. It is based on unfounded supposition.[4]

The defense of charitable immunity is unavailable to an institution in the Defendant's financial position. We decline to extend the scope of this much criticized doctrine to shield the Defendant in the tort case before us. *See Rhoda v. Aroostook General Hospital, supra*, 226 A.2d at 532.

The entry, therefore, must be:

Appeal sustained.

Judgment vacated.

Remanded for entry of a summary judgment for the Plaintiff against the Defendant on the defense of charitable immunity and further proceedings consistent with the opinion herein.

All concurring.

---

**4.** The most recent and perhaps most useful study of the practical consequences of the abrogation of tort immunity for hospitals concludes that, on the whole, it has had little measurable effect upon the costs of health care. Caldeira, *Changing the Common Law: Effects of the Decline of Charitable Immunity,* 16 L. & Soc'y. Rev. 669 (1982).