**318**

Arnold B. CHILD et al.

v.

**CENTRAL MAINE MEDICAL CENTER.**

Supreme Judicial Court of Maine.

Argued April 24, 1990.

Decided June 8, 1990.

Peter B. Bickerman (orally), Lipman & Katz, Augusta, for plaintiff.

Harrison L. Richardson (orally), Richardson & Troubh, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, HORNBY * and COLLINS, JJ.

GLASSMAN, Justice.

On the joint motion of the parties, pursuant to M.R.Civ.P. 72, this case is before us on the report of an interlocutory ruling of the Superior Court (Androscoggin County, *Alexander, J.*) to determine whether Central Maine Medical Center ("CMMC") is a "charitable organization" entitled to immunity from tort liability except as provided in 14 M.R.S.A. § 158 (1980).[1] On the record before us, we conclude that CMMC has not carried its burden of establishing that it is entitled to charitable immunity. Accordingly, we vacate the Superior Court's order holding that CMMC's potential liability for damages in this case is limited to its available insurance coverage.

This medical malpractice action against CMMC seeks damages for the personal injuries suffered by Arnold B. Child, Jr. during his birth on June 14, 1979, as a result

---

\* Hornby, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. 14 M.R.S.A. § 158 (1980) provides:

A charitable organization shall be considered to have waived its immunity from liability for negligence or any other tort during the period a policy of insurance is effective covering the liability of the charitable organization for negligence or any other tort. Each policy issued to a charitable organiza- tion shall contain a provision to the effect that the insurer shall be estopped from asserting, as a defense to any claim covered by said policy, that such organization is immune from liability on the ground that it is a charitable organization. The amount of damages in any such case shall not exceed the limits of coverage specified in the policy, and the courts shall abate any verdict in any such action to the extent that it exceeds such policy limit.

of the alleged negligence of CMMC. By its amended answer, CMMC raised charitable immunity as an affirmative defense. At a hearing before the trial court on this issue, the parties submitted briefs and presented evidence. In reviewing the status of CMMC in 1979, at the time the plaintiffs' cause of action accrued,[2] the court found that CMMC possessed a number of charitable attributes including the use of volunteer labor, the provision of medical services at no charge or reduced cost to the poor, and the subsidization of a nursing school. The court also found that CMMC was a nonprofit corporation exempt from state and federal taxation. In reviewing CMMC's financial status, the court found that only "[s]omewhere around one percent of the funds [CMMC] received in the relevant years—perhaps less than one percent—are restricted or unrestricted private contributions." Based on these findings, the court concluded that CMMC had sustained its burden of proving that it is a "charitable organization" entitled to immunity subject only to the limitation set forth in section 158. We disagree.

We examine the common law doctrine of charitable immunity, as judicially created, to determine whether CMMC is entitled to that defense. *See Thompson v. Mercy Hospital*, 483 A.2d 706, 707 (Me.1984) ("The doctrine of charitable immunity is a creation of the common law. Except for one significant restriction imposed by [section 158], its applicability in Maine is controlled entirely by the precedents of this Court"). Absent a definition of "charitable organization" as used in section 158, we can assume it refers to that kind of organization entitled to charitable immunity under the common law doctrine.

As early as *Webber Hospital Association v. McKenzie*, 104 Me. 320, 71 A. 1032 (1908), we set forth the constituent elements of a "charitable institution" as follows: (1) that it "has no capital stock and no provision for making dividends or prof-

its" and (2) that it derive its funds "mainly from public and private charity, ... hold[ing] them in trust for the object of the institution." *McKenzie*, 104 Me. at 329, 71 A. at 1036. It is undisputed that CMMC satisfies the criteria of the first prong; accordingly, we address only the second prong of the *McKenzie* test. In doing so, we note that this "constituent element" has remained unchanged throughout our case law. *See Thompson*, 483 A.2d at 707; *Mendall v. Pleasant Mountain Ski Development, Inc.*, 159 Me. 285, 289, 191 A.2d 633, 636 (1963); and *Jensen v. Eye and Ear Infirmary*, 107 Me. 408, 411, 78 A. 898, 899 (1910).

In *Mendall*, based on the trial court's conclusion that all of the State Principals' Association's funds and efforts were expended in furthering education in the public secondary schools, the trial court granted the Association's motion for a summary judgment on the ground that it had charitable immunity. On our review we stated that "[w]e are concerned primarily, however, with the sources of income of the Association." *Mendall*, 159 Me. at 287, 191 A.2d at 634. In vacating the judgment, we neither broadened nor narrowed the common law doctrine but held that "an organization [such as the Association] which receives and administers virtually no charitable gifts or donations is not entitled to immunity from liability for its torts." *Mendall*, 159 Me. at 291, 191 A.2d at 637.

After the enactment of 14 M.R.S.A. § 158 in 1965,[3] in *Rhoda v. Aroostook General Hospital*, 226 A.2d 530 (Me.1967), we for the first time considered the applicability of that statute in an action for damages for the negligence of a corporate defendant *conceded to be a charitable institution*, and affirmed the dismissal of the complaint on the ground that the defendant had charitable immunity. *Id.* at 533.

■ It was not until *Thompson v. Mercy Hospital* that we again addressed the claim

---

**2.** Neither of the parties challenges the court's decision to confine its review to this date.

**3.** This section was originally enacted as section 156 of this title of P.L.1965, ch. 383 without

reference to section 156 of this title enacted by P.L.1965, ch. 424. Accordingly, P.L.1965, ch. 513, §§ 27 and 28 repealed section 156 as enacted by P.L.1965, ch. 383 and reenacted it as this section.

of charitable immunity by a hospital in response to a plaintiff's tort claims. The hospital's answers to interrogatories revealed that unrestricted gifts and bequests comprised .6%, .5% and .1% of its annual revenues for the fiscal years of 1980, 1981, and 1982, while specific donations constituted .3%, .1% and .1%, respectively, of its revenues for those same years. Thus, donations constituted only a very small fraction of its annual revenue. In considering the merits of the hospital's charitable immunity defense, we reaffirmed our requirement that "in order to qualify for charitable immunity, an institution must, *inter alia*, derive its funds 'mainly from public and private charity.'" *Thompson*, 483 A.2d at 707. We recognized two rationales for this immunity: "(1) that funds donated for charitable purposes are held in trust to be used exclusively for those purposes, and (2) that to permit the invasion of these funds to satisfy tort claims would destroy the sources of charitable support upon which the enterprise depends." *Id.* at 707–08 (quoting *Rhoda*, 226 A.2d at 532; *Mendall*, 159 Me. at 290, 191 A.2d at 636). We rejected each rationale as a basis for extending immunity to the defendant hospital, reasoning that:

> The small fraction of the Defendant's revenues donated for charitable purposes need not be depleted to satisfy tort claims. Even where its insurance coverage may be insufficient to satisfy such claims fully, the Defendant can draw exclusively upon its noncharitable revenues. The second rationale is inapplicable because the Defendant's survival does not depend on its source of charitable support.

*Thompson*, 483 A.2d at 708. Thus, contrary to CMMC's assertion, *Thompson v. Mercy Hospital* did not "change the law" of charitable immunity in Maine. Instead, that case merely reiterated the requirement set forth in *Jensen* and *Mendall* that before an organization will be considered "charitable" for immunity purposes, it must prove that its funds come "mainly from public and private charity." *See Thompson*, 483 A.2d at 707; *Mendall*, 159

Me. at 289–90, 191 A.2d at 635–36; *Jensen*, 107 Me. at 410, 78 A. at 899.

■ On the record before us, we cannot distinguish between the financial status of Mercy Hospital, as disclosed in *Thompson*, and that of CMMC. The court's finding that CMMC's charitable attributes include, *inter alia*, the provision of medical services at no charge or reduced cost to the poor and the subsidization of a nursing school, simply addresses how some of CMMC's income may have been expended without addressing the essential criteria of the derivation of those monies. As to the derivation of the hospital's funds, the trial court, after careful consideration of the testimony of CMMC's accounting experts and CMMC's affidavits, memoranda and brief, concluded that "[s]omewhere around one percent of the funds [CMMC] received in [1979]—perhaps less than one percent—are restricted or unrestricted private contributions." Accordingly, there is nothing in this record to establish that CMMC receives its funds "mainly from public and private contributions." As we stated in *Thompson*, neither of the rationales we have recognized as supporting our doctrine of charitable immunity "justifies extending immunity to an organization which derives only a modicum of its financial support from charitable sources." *Thompson*, 483 A.2d at 708. We therefore conclude that CMMC has failed to meet its burden of establishing that it is entitled to charitable immunity. Accordingly, we vacate the order of the Superior Court limiting Central Maine Medical Center's potential responsibility for damages to the policy limits of its applicable liability insurance as provided in section 158.

The entry is:

Order of the Superior Court dated October 2, 1989 vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

McKUSICK, C.J., and ROBERTS, WATHEN and CLIFFORD, JJ., concurring.

COLLINS, Justice, dissenting.

I respectfully dissent. The incident underlying this medical malpractice action occurred in June 1979. Therefore, the question of whether CMMC is a "charitable organization" subject to the provisions of section 158 should be addressed in terms of the status of CMMC and the state of the law at that time. Accordingly, I agree with the analysis of the Superior Court and would affirm.

The numerous references to non-profit hospitals in the legislative debate that was held in both the Maine House of Representatives and the Maine Senate when 14 M.R.S.A. § 158 was adopted in 1965 clearly indicate that the legislature intended to protect all non-profit hospitals with tort immunity above their available insurance. The Report of the Recess Study Committee, dated December 15, 1964, even used a charitable hospital to illustrate the application of charitable immunity.

In 1967, the Law Court reaffirmed the legislative intent to preserve the doctrine of charitable immunity in a case that, significantly, dealt with a non-profit hospital. *Rhoda v. Aroostook General Hospital*, 226 A.2d 530 (Me.1967). While the parties in that case conceded that the hospital was a charitable organization, that decision nevertheless emphasized the special position of the non-profit hospital in Maine law. In 1976, we reaffirmed the *Rhoda* decision by citing to it in a footnote as an example of legislative intent to adopt the judicial doctrine of governmental immunity evidenced by enactment of a statute. *Davies v. City of Bath*, 364 A.2d 1269, 1271 n. 6 (Me.1976). *Davies* is closer in time to the incident in question than *Thompson v. Mercy Hospital*, 483 A.2d 706 (Me.1984), which the court relies upon. I believe that the status of the law in 1979 when the incident in question occurred should be presumed, in the absence of evidence to the contrary, to be consistent with the earlier, generally held view that non-profit hospitals such as C.M.M.C. were "charitable organizations" under section 158. Accordingly, I would agree with the Superior Court and refrain from applying retroactively any changes to the law occasioned by *Thompson*.